UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARJORIE N. BAILEY ) | |
| for LEDONESHA C. JOHNSON, ) | |
|     Plaintiff, ) | |
| ) | Case No. 3:09-cv-1094 |
| v. ) | Judge Wiseman/Brown |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security, ) | |
|     Defendant. ) | |

To:   The Honorable Thomas A. Wiseman, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to § 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Childhood Supplemental Social Security Income ("SSI") benefits, as provided under Title XVI of the Social Security Act, as amended. Presently pending before the Magistrate Judge is Plaintiff's Motion for Judgment on the Administrative Record (Docket Entry 15) and accompanying memorandum of law (Docket Entry 16) and Defendant's Response (Docket Entry 17). The Magistrate Judge has also reviewed the Administrative Record (Docket Entry 14), hereinafter "Tr." For the reasons set forth below, the Magistrate Judge **RECOMMENDS** the Plaintiff's Motion be **DENIED** and the decision of the Social Security Administration be **AFFIRMED**.

## I. INTRODUCTION

Plaintiff's mother, Marjorie Bailey, applied for disability benefits on Plaintiff's behalf on

1

December 5, 2006, with an alleged onset date of April 4, 2006. (Tr. 97). The onset date was later amended to December 5, 2006, the protective filing date. (Tr. 184). Plaintiff alleged she was disabled as a result of ADHD and knee pain. (Tr. 122). The application was denied initially and on reconsideration. (Tr. 84, 93). Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") on April 20, 2007. (Tr. 88). Plaintiff, her mother, and her attorney attended a hearing conducted by ALJ Barbara Kimmelman on May 8, 2009. (Tr. 36). The ALJ denied Plaintiff's request for benefits. (Tr. 6).

In her decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant was born on August 16, 1998. Therefore, she was a school-age child on December 4, 2006, the date the application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.924(b) and 416.972).

3. The claimant has the following severe impairments: Attention Deficit Hyperactivity Disorder (ADHD) and growing pains in knees (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).

6. The claimant has not been disabled, as defined in the Social Security Act, since December 4, 2006, the date the application was filed (20 CFR 416.924(a)).

Plaintiff filed a request for review with the Appeals Council on June 2, 2009, which was denied on October 26, 2009. (Tr. 1). This action was timely filed on November 12, 2009. (Docket Entry 1).

## II. REVIEW OF THE RECORD

Plaintiff was born on August 16, 1998 and was 8 years old at the time of her application. (Tr. 97).[1] She was first screened for ADHD on April 18, 2006, when she was in second grade. (Tr. 190-95). The report notes there were two Support Team meetings held with Plaintiff's mother on October 19, 2005 and February 15, 2006. (Tr. 191). Plaintiff's teacher, Mrs. Armstrong, stated her concerns regarding Plaintiff's reading skills and stated that Plaintiff is "polite, well-liked by her peers, and is not a behavior problem." (Tr. 191). Mrs. Armstrong's concerns were based on Plaintiff's performance in reading and phonics and based on Plaintiff's hyperactivity. (Tr. 191).

Plaintiff was observed in the classroom by Erin Gowan, the school psychologist intern, for a period of approximately 40 minutes on March 8, 2006. (Tr. 191). Based on her observations, Ms. Gowan described Plaintiff as appearing average in organization, social skills, communication, self-help, and motor skills and below average in attention/concentration, self-control, and cognitive processing. (Tr. 191). Ms. Gowan also found Plaintiff "had difficulty with attention/hyperactivity and with grammar when writing" and that Plaintiff "needed one-on-one help with spelling and . . . crave[d] adult approval of her work." (Tr. 191-92).

As part of the assessment, Mrs. Armstrong completed a Teacher Rating System based on her observations of Plaintiff's behavior. (Tr. 192). Plaintiff's mother completed a similar rating, called the Parent Rating Scale. (Tr. 192). Both ratings showed Plaintiff to be "markedly atypical" in hyperactivity and in Conners' ADHD Index. (Tr. 194). Based on these ratings and

---

[1] Plaintiff alleged in her application that she suffered from disabling knee pain, which the ALJ found to be severe, and Plaintiff has not appealed this decision. For this reason, the Magistrate Judge only includes those facts from the Record relevant to Plaintiff's ADHD.

3

on Ms. Gowan's observations, Ms. Gowan and Dr. Patricia Mitchell, the school psychologist, concluded Plaintiff appeared to be positive for the presence of ADHD symptoms in the classroom and at home. (Tr. 194).

Prior to the ADHD evaluation, Mrs. Armstrong, Plaintiff's second grade teacher, completed a Teacher Checklist for Plaintiff on August 13, 2005. (Tr. 153-54). Mrs. Armstrong noted Plaintiff almost always has difficulty concentrating, reverses letters and numbers, exhibits poor memory, has difficulty following directions, has disorganized work habits, and requires one-on-one assistance. (Tr. 153). She also indicated Plaintiff talks excessively, does not retain information, and uses incorrect grammar or word order. (Tr. 154). At the end of the year, Mrs. Armstrong described Plaintiff as a "pleasure to have this year" and recommended Plaintiff be promoted to the third grade. (Tr. 170).

On September 25, 2006, Plaintiff visited her pediatrician, Dr. Rebecca Isbell, and her mother requested she start ADHD medication. (Tr. 208). Plaintiff was prescribed Methylin (methylphenidate). (Tr. 208). At a follow-up visit on October 25, 2006, Dr. Isbell noted Plaintiff was "doing well on medication." (Tr. 207).

A state agency psychologist, Dr. Rebecca Joslin, and a state agency physician, Dr. William Regan, completed Childhood Disability Evaluations for Plaintiff. (Tr. 128-33, 137-42). Dr. Joslin's report, dated January 24, 2007, concluded Plaintiff's ADHD was a severe impairment, but her condition improved with medication and did not meet or functionally equal a listed impairment. (Tr. 128-29, 133). She determined Plaintiff had less than marked limitations in attending and completing tasks, and no limitations in acquiring and using information, in interacting and relating with others, and in caring for herself. (Tr. 130-31). In his March 13,

4

2007 report, Dr. Regan similarly concluded Plaintiff's only limitation was in attending and completing tasks, which resulted in a less than marked limitation. (Tr. 139). He also noted Plaintiff's ADHD had improved with medication and that her main remaining limitation was in concentration and persistence. (Tr. 142). While severe, Dr. Regan believed Plaintiff's impairment did not equal a listed impairment. (Tr. 142).

Plaintiff's third grade teacher, L. Jones, noted Plaintiff was "delightful" and had "made remarkable progress" and recommended promotion to the fourth grade. (Tr. 175). In the fourth grade, Plaintiff earned mostly Bs and Cs. (Tr. 178). Mrs. Williams, a special education teacher at Plaintiff's school, submitted a note that was introduced at the hearing. (Tr. 181). She stated Plaintiff "has the ability to focus when put in the appropriate atmosphere without distraction" but that "[t]eachers have concerns about the student's behavior (aggression towards teachers and students)." (Tr. 181). There is no indication Plaintiff is or has been in the special education program.

At the hearing on May 8, 2009, Plaintiff testified she likes school because there aren't "bad people in the school" and "you have great friends there." (Tr. 42). She testified that students get treats on Fridays if they bring their homework and projects in, but Plaintiff only gets the treats sometimes because she leaves her homework or projects at home or is too "lazy" to bring them. (Tr. 42, 45). She gets in trouble approximately two times a day for talking in class and not turning around. (Tr. 43). She also gets in trouble for forgetting her ID or belt and was once suspended for not having her ID. (Tr. 44, 48). She stated she gets treats approximately every three Fridays. (Tr. 44). Plaintiff testified she spends most of her time with her grandmother, who also lives in the home, because her mother does not get home from work until

5

10 or 11 at night. (Tr. 46). Plaintiff typically goes to bed at 1 a.m. and gets up at 7 a.m. to go to school. (Tr. 46). Plaintiff named nine of her school friends, who she also plays with outside school. (Tr. 47).

Plaintiff's mother testified that Plaintiff does not read at her grade level and has trouble making change and telling time. (Tr. 54-55). She stated Plaintiff does not remember directions, and Plaintiff's mother and grandmother have to tell her to pick up her things every day. (Tr. 55). Plaintiff's mother has to constantly remind Plaintiff to stay on task, because she gets distracted easily and distracts others at school. (Tr. 56). Plaintiff's mother testified Plaintiff has only one good friend, but they often fight, and Plaintiff has a hard time keeping friends. (Tr. 57, 60). Plaintiff's teachers often tell her mother she will not pay attention or stay still. (Tr. 58). When Plaintiff was taking Methadone, she had suicidal thoughts and was moody. (Tr. 59). Plaintiff is currently on Adderall, which calms her down and allows her to do her homework without constant redirection. (Tr. 60, 61). Plaintiff's mother testified, however, that the medication does not last through the entire school day and wears off around 12 or 1. (Tr. 62). Plaintiff's mother stated Plaintiff suffered from stomach aches from the medication, but she had not yet discussed that with Plaintiff's doctor. (Tr. 63). Plaintiff is not in special education classes, but she does get tutoring at the school. (Tr. 68). Plaintiff needs one-on-one help to complete her assignments. (Tr. 68). Plaintiff's mother also testified Plaintiff's 2009 grades had declined to Cs, Ds, and Fs, because she no longer had one-on-one help. (Tr. 70).

### III. CONCLUSIONS OF LAW

6

A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B.  Proceedings at the Administrative Level

Section 1614(a)(3)(C)(I) of the Social Security Act provides that an individual under the age of 18 is disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). Pursuant to 20 C.F.R. § 416.924, the ALJ must apply a three-part test to evaluate a child's disability: (1) whether the child is

7

working; (2) whether the child has a severe medically determinable impairment; and (3) whether the child has an impairment that meets, medically equals, or functionally equals a listed impairment.

A child may also be found to be disabled if she has "a severe impairment or combination of impairments that does not meet or medically equal any listing . . . [but] results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a). In other words, the impairment or impairments "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* A "marked" limitation is, generally, an impairment that "interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation is an impairment that "interferes very seriously with your ability to independently initiate, sustain, or complete activities" or is "more than marked." 20 C.F.R. § 416.926a(e)(3). A child's functioning is assessed by considering how the child functions in her activities in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b). Each of these domains is assessed based on the age of the child--in this case, school-age children, age 6 to 12. *See*, *e.g.*, 20 C.F.R. § 416.926a(h)(2)(iv).

C.  Plaintiff's Statement of Error

Plaintiff identifies four errors for review. First, Plaintiff argues the ALJ erred by finding Plaintiff had a marked limitation in attending and completing tasks rather than an extreme limitation in this domain. Second, the ALJ erred by failing to consider whether Plaintiff met Listing 112.11 Attention Deficit Hyperactivity Disorder. Third, the ALJ erred by finding that

8

Plaintiff had a less than marked limitation in interacting and relating with others rather than a marked limitation in this domain. Fourth, the ALJ improperly evaluated, assessed, and inadequately discussed the credibility of Plaintiff's and her mother's statements, as required by SSA Ruling 96-7P. For the reasons set forth below, the Magistrate Judge believes none of these arguments is persuasive.

*1. Attending and completing tasks assessment*

Attending and completing tasks is generally defined as "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities." 20 C.F.R. § 416.926a(h). For a child Plaintiff's age, attending and completing tasks means "you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments." *Id.* at (h)(2)(iv). In addition, a school-age child "should be able to concentrate on details and not make careless mistakes" and "change [] activities or routines without distracting [herself] or others, and stay on task and in place when appropriate." *Id.* Plaintiff should also be able to "sustain [her] attention well enough to participate in group sports, read by [herself], and complete family chores," as well as "complete a transition task . . . without extra reminders and accommodation." *Id.* A "marked" limitation, as noted above, is one that interferes seriously with a child's day-to-day functioning. 20 C.F.R. § 416.926a(e)(2)(I). An "extreme" limitation is more severe than "marked," and interferes very seriously with a child's day-to-day functioning. 20 C.F.R. § 416.926a(e)(3)(I).

In determining Plaintiff had marked limitation in this domain, the ALJ relied on Mrs. Armstrong's and Plaintiff's mother's reports that Plaintiff had difficulty staying on task,

9

concentrating, and following directions. (Tr. 16). The ALJ noted, however, that Plaintiff had never been retained in any grade and no longer saw a reading specialist, as she had in either the second or third grade. (Tr. 16).

Plaintiff relies on Mrs. Armstrong's report and other educational records dated prior to Plaintiff's ADHD diagnosis and treatment with medication. (Tr. 153-61). This evidence has little probative value to Plaintiff's condition on medication, however. The evidence indicates Plaintiff's behavior and school work improved with medication. Dr. Isbell noted Plaintiff was "doing well on medication" on October 25, 2006. (Tr. 207). Despite Plaintiff's mother's testimony that Plaintiff experienced numerous side effects and that the medication does not last the entire school day, there is no indication that Plaintiff's mother discussed this with a physician, and Plaintiff continues to take medication for her ADHD. (Tr. 59, 62-63). The undersigned therefore believes the ALJ had substantial evidence to find Plaintiff's limitation in this domain "marked" rather than "extreme." It is clear that Plaintiff's ADHD seriously interferes with her day-to-day life, but, particularly in the presence of medication, the ALJ had substantial evidence to discount Plaintiff's claim that the ADHD very seriously limited her activities.

## 2. *Listing 112.11*

Listing 112.11 provides the required level of severity for Attention Deficit Hyperactivity Disorder. 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 112.11. In order to meet a listed impairment, Plaintiff must have "medically documented findings" of marked inattention, marked impulsiveness, and marked hyperactivity that also result in "at least two of the appropriate age-group criteria in paragraph B2 of 112.02." *Id.* Paragraph B2 provides four categories of marked

10

impairments: (1) "marked impairment in age-appropriate cognitive/communicated function, documented by medical findings;" (2) "marked impairment in age-appropriate social functioning, documented by history and medical findings;" (3) "marked impairment in age-appropriate personal functioning, documented by history and medical findings;" and (4) "marked difficulties in maintaining concentration persistence, or pace." 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 112.02(B)(2).

While the ALJ did not specifically address the requirements of Listing 112.11, she clearly considered whether Plaintiff met any of the listed impairments, particularly with regard to Plaintiff's ADHD. (Tr. 13-14). The ALJ examined the educational and medical evidence submitted by Plaintiff, as well as the opinion evidence offered by Dr. Joslin and Dr. Regan on Plaintiff's ADHD. (Tr. 13-14).

The ALJ found Plaintiff has a marked limitation in only one of the six domains of function: attending and completing tasks. (Tr. 15-16). This domain, defined above, includes some aspects of inattention and impulsiveness, but it does not include findings of hyperactivity. In examining the evidence of record, the ALJ did not find that Plaintiff suffered from marked hyperactivity. The ALJ noted Plaintiff suffered from some hyperactivity, but Dr. Isbell's notes and subsequent school reports reflect Plaintiff's symptoms had responded to medication. (Tr. 13). The ALJ also relied on the opinions of Dr. Joslin and Dr. Regan, which concluded Plaintiff's ADHD did not meet listing 112.11. (Tr. 13-14, 128-33, 137-42).

Plaintiff essentially asks the Court to weigh the evidence again and make a conclusion different from ALJ. While there may be evidence in the record supporting a conclusion of marked hyperactivity, that is not the question before the Court. The ALJ's conclusion that

11

Plaintiff's ADHD does not meet listing 112.11 is supported by substantial evidence and, in the Magistrate Judge's opinion, should be affirmed. The Magistrate Judge believes that the ALJ should have specifically addressed the individual requirements in listing 112.11, but her failure to do so is not legal error.

*3. Interacting and relating with others assessment*

Interacting and relating with others is generally defined as "how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(I). For a child Plaintiff's age, the regulations provide Plaintiff "should be able to develop more lasting friendships with children," "should begin to understand how to work in groups to create projects and solve problems," "should have an increasing ability to understand another's point of view and to tolerate differences," and "should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." *Id.* at (i)(2)(iv). The ALJ concluded Plaintiff has less than marked limitation in this domain. (Tr. 16).

Plaintiff argues there is ample evidence to show Plaintiff has a marked limitation in this domain. Plaintiff is again asking the Court to insert its judgment for that of the ALJ. The ALJ had substantial evidence to find Plaintiff had less than marked limitation in interacting and relating with others. Plaintiff testified she has several friends, and Plaintiff's education records indicate she cooperated with others, made friends easily, and got along with her peers. (Tr. 47, 191). While Mrs. Williams submitted a letter stating Plaintiff was aggressive towards teachers and students, it is unclear what kind of relationship Mrs. Williams, a special education teacher,

had with Plaintiff. (Tr. 181). The Magistrate Judge believes the ALJ's decision was based on substantial evidence and should therefore be affirmed.

*4. Credibility findings*

An ALJ's finding on the credibility of a claimant is to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing the witness's demeanor and credibility. *Walters v. Commissioner of Social Security*, 127 F.3d 525 (6th Cir. 1997) (citing 42 U.S.C. § 423 and 20 C.F.R. 404.1529(a)). Further, discounting the credibility of a claimant is appropriate where the ALJ finds contradictions from medical reports, claimant's other testimony, and other evidence. *Id*. An ALJ's responsibility when evaluating credibility of symptoms is clarified in SSR 96-7p, which provides, in relevant part, that "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and "[i]t is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" SSR 96-7p.

The ALJ concluded that "the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not credible to the extent they are inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings." (Tr. 19-20). Plaintiff argues that this is the kind of "conclusory" statement prohibited in SSR 96-7p. In light of the full opinion, however, the Magistrate Judge believes the ALJ has complied with SSR 96-7p. The ALJ cites the testimony of Plaintiff's mother in several places and compares it to the available medical and other evidence. (Tr. 14, 16, 17, 18). It is apparent to the Magistrate Judge that the ALJ fully

13

considered the testimonial evidence and tested its credibility based on her analysis of the entire record. The Magistrate Judge therefore believes the ALJ's finding of credibility should be affirmed.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge **RECOMMENDS** the Plaintiff's Motion be **DENIED** and the decision of the Social Security Administration be **AFFIRMED**.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 18th day of May, 2010.

/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge